Andrew VOISIN, Plaintiff,

v.

**O.D.E.C.O. DRILLING CO., Defendant Third-Party Plaintiff-Appellant,**

v.

**RIG HAMMERS, Third-Party Defendant-Appellee.**

No. 83–2257.

United States Court of Appeals, Fifth Circuit.

Oct. 29, 1984.

James Patrick Cooney, Wm. R. Towns, E.D. Vickery, Houston, Tex., for defendant third-party plaintiff-appellant.

L. Keith Slade, Houston, Tex., for Rig Hammers.

Before GARZA, REAVLEY, and JOHNSON, Circuit Judges.

GARZA, Circuit Judge:

The question presented is whether section 905(b) of the Longshoremen's and Harbor Worker's Compensation Act (LHWCA) voids an agreement by a stevedore to name a vessel owner as an additional insured on its liability insurance policies. The court below found that such an agreement was void under the statute. Finding that neither the statute nor policy considerations support such a conclusion, we reverse.

### Background

Andrew Voisin, an employee of Rig Hammers, Inc. (Rig Hammers), was injured while working aboard the OCEAN PRIDE, a drilling vessel positioned off the coast of Texas. The OCEAN PRIDE was owned and operated by Odeco Drilling Inc. (Odeco). At the time of his injury, Voisin was acting as supervisor of a Rig Hammers well casing crew on board the OCEAN PRIDE to drive conductor pipe in preparation for drilling operations. Voisin brought suit against Odeco and Rig Hammers alleging a cause of action under the Jones Act, a negligence action against Odeco, and an unseaworthiness action against the vessel. Gray & Co., Inc., Rig Hammers' worker's compensation insurance carrier, intervened seeking reimbursement for the compensation benefits it had paid to Voisin. Odeco filed a third party action against Rig Hammers alleging two causes of action based on Rig Hammers' breach of the Master Service Contract between Odeco and Rig Hammers.

The Master Service Contract between Odeco and Rig Hammers required Rig Hammers to carry various kinds of insurance with stated minimum limits. Further, paragraph 8(f) of the contract provided in relevant part that:

> ... [A]ll policies of [Rig Hammers] ... shall name [Odeco] as an additional assured and shall be endorsed to waive Subrogation against [Odeco] and against all parties for whom [Odeco] may be working, with the exception of Workman's Compensation insurance but including all insurance carried by [Rig Hammers] protecting against loss of or damages to its property and equipment employed in the performance of any work order issued hereunder.

Rec.Vol. I, 30G. The contract also contained a broadly worded indemnity clause operating in favor of Odeco.[1] The record reflects that Rig Hammers had an endorsement added to its comprehensive general liability and automobile liability policies. The endorsement stated, however, that the insurer " 'assum[ed] no greater liability ... than would have been assumed by insuring the indemnity clause contained in the contract between Rig Hammers and Odeco....' " *See* Third Party Defendant's Trial Brief at p. 6, Rec.Vol. I, 123. Odeco made timely but unavailing demands upon Rig Hammers and its insurer to secure its insurance rights under the Master Service Contract.

At the time of trial Odeco announced that it had settled with Voisin for $75,000 exclusive of the lien for worker's compensation benefits previously received by Voisin from Rig Hammers' worker's compensation carrier. Odeco's claim against Rig Hammers was tried to the court. After hearing evidence, the trial court found that Voisin was a maritime employee under the LHWCA. The court held that the indemnity and additional assured provisions of the Odeco Master Service Contract were void under the LHWCA, and therefore denied Odeco recovery against Rig Hammers. Additionally, the court held that Gray & Company was entitled to equitable subrogation against Odeco for the compensation benefits received by Voisin in the amount of $45,691. *See Voisin v. O.D.E.C.O. Drilling, Inc.*, 557 F.Supp. 715, 723 (E.D. TX.1982).

Odeco brought this appeal. Odeco does not challenge the district court's ruling that the indemnity provision was void under section 905(b) of the LHWCA. At issue here is the district court's holding that the additional assured provision of the Ode-co Master Service Contract was similarly void.

### Discussion

█ The LHWCA was enacted in 1927 to provide for certain maritime employees a compensation scheme similar to state worker's compensation systems. *Longmire v. Sea Drilling Corp.*, 610 F.2d 1342, 1349 (5th Cir.1980) (footnote omitted). The statute affords benefits to the worker regardless of the employer's fault and provides that the employer's only liability for the injury is in the amount specified in the statute. *Edmonds v. Compagnie Generale Transatl.*, 443 U.S. 256, 261, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979); 33 U.S.C. § 905(a) (1976). An employer's liability is thus limited, but the worker is assured compensation in the event of injury.

The court below invalidated the indemnity and additional assured provisions of the Odeco Master Service Contract under section 905(b) of the LHWCA. *See Voisin*, 557 F.Supp. at 719–22. Section 905(b), which was part of the 1972 amendments to the LHWCA, provides in relevant part:

> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person ... may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel.... The liability of the

---

1. The indemnity provision provided in pertinent part that "[I]t is ... the intent of this paragraph to provide for indemnity to the maximum extent permitted by law and to support such indemnity by liability insurance coverage to be furnished by the indemnitor. * * * [Rig Hammers] agrees to indemnify and hold harmless Odeco from and against ... any and all claims, demands, or actions for damages to persons and/or property (including, but not limited to claims, demands, or actions for bodily injury, illness, disease, death, loss of service, loss of society, maintenance, cure, wages, or property), which may be brought against [Odeco] (including, but not limited to such claims, demands, or actions brought by [Rig Hammers] employees and agents and the employees and agents of its subcontractors....)" Rec.Vol. I, 30H.

vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

33 U.S.C. § 905(b) (1976).

■ The district court ruled correctly that the indemnity clause of the Odeco Master Service Contract directly contravenes section 905(b). 557 F.Supp. at 720. Reasoning that the additional assured clause of the Master Service Contract was functionally equivalent to an indemnity clause, the court also invalidated the additional assured provision. *Id.* at 720–21. Additionally, the court found that policy considerations justified construing section 905(b) so as to proscribe such additional assured clauses. *Id.* at 722–23.

■ The legislative history of section 905(b) does not support the district court's construction of the statute or Rig Hammers' contention that the additional assured provision of the Master Service Contract results in a proscribed form of indirect liability. *See Price v. Zim Israel Navigation Co., Ltd.*, 616 F.2d 422, 428 (9th Cir.1980). Prior to the enactment of section 905(b), a series of Supreme Court cases had eroded away the limited liability employers were granted under the LHWCA as originally written. We explained this development in *Longmire*, 610 F.2d 1342:

> First, the Supreme Court's decision in *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.ED. 1099 (1946), permitted a longshoreman who was injured while performing work traditionally performed by seamen on a vessel owned by someone other than the injured longshoreman's employer to bring an action against the vessel based on the ves-

sel's absolute, nondelegable duty to provide a seaworthy vessel, even if the 'unseaworthy' condition had been created by the longshoring crew. Ten years later, in *Ryan Stevedoring Co. v. Pan Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), the court held that a vessel liable under *Sieracki* circumstances could obtain indemnification from the longshoreman's employer (the stevedore), on the theory that the creation of the unseaworthy condition by the longshoring crew was a breach of the stevedore's implied warranty of workmanlike performance. Thus, after *Sieracki* and *Ryan* the stevedore's liability to his employees was no longer confined to the compensation obligation established in the LHWCA.

*Id.* at 1349. Under the indemnity triangle created by *Sieracki* and *Ryan*, the employer's statutory grant of limited liability " 'became but a hollow promise.' " *See id.* (citing *Smith v. M/V Captain Fred*, 546 F.2d 119, 1920 (5th Cir.1977)). It was against this backdrop that Congress added section 905(b) to the LHWCA. Congress enacted section 905(b) "to eliminate the shipowner's liability to the longshoreman for unseaworthiness and the stevedore's liability to the shipowner for unworkmanlike service resulting in injury to the longshoreman—in other words, to overrule *Sieracki* and *Ryan*." *See Edmonds*, 443 U.S. at 262, 99 S.Ct. at 2757, 61 L.Ed.2d at 528; H.R.Rep. No. 1441, 92d Cong. 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad.News 4698, 4702–05. Neither the statute nor its legislative history suggest that additional assured clauses such as the one before us are a proscribed form of indirect liability. We therefore agree with Odeco's contention that a valid additional assured clause[2] is not prohibited under section 905(b).

---

**2.** In regard to the general validity of the agreement, Rig Hammers suggests that the Master Service Contract is void for lack of consideration. *See* Brief for Appellee at 8. As the *Price* court noted, however, "[t]he economic burden of the premiums can be allocated as the parties wish." 616 F.2d at 429. The Master Service

Contract was dated October 22, 1976, some two years prior to Voisin's injury. The record reflects that Odeco and Rig Hammers had an ongoing business relationship. *See* Odeco's Reply Brief, Rec.Vol. I, 140. On some occasions, Rig Hammers would be performing its services for Odeco; in other cases, Rig Hammers would

This conclusion is consistent with the Ninth Circuit's holding in *Price v. Zim Israel Navigation Co., Ltd.*, 616 F.2d 422 (9th Cir.1980). In *Price*, Zim Israel Navigation Co. (Zim) entered into a contract with International Transportation Service (ITS), a stevedoring company. The contract required ITS to name Zim as a coinsured on its liability insurance policies. ITS directed its insurer, Tokio Marine & Fire Insurance Co. (Tokio), to add Zim as a coinsured on its comprehensive liability insurance policy. Price, a longshoreman employed by ITS, was injured while working aboard a Zim vessel.[3] Tokio refused to defend Price's suit against Zim. The Price suit ultimately settled, and Zim brought suit against Tokio. One of Tokio's arguments on appeal was that the coinsured clause violated section 905(b).

The Ninth Circuit rejected Tokio's argument that the coinsured provision of the contract violated section 905(b). The court explained that "Congress' purpose in prohibiting both direct and indirect liability of stevedores to vessels was to foreclose all theories under which *Ryan* triangle suits might be brought rather than to prevent insurance arrangements" such as the one between ITS and Zim. 616 F.2d at 428. Rig Hammers contends that *Price* is distinguishable in that it involved an action against an insurer and because Tokio had on a previous occasion accepted the defense of a longshoreman's suit under the policy's coinsured endorsement (thus raising a possible estoppel issue). Despite these factual variances, we agree with the court's conclusion that an agreement as to which party should bear the burden of procuring insurance is not an illegal contract of indemnity under section 905(b).

The court below also invalidated the additional insured provision of the Odeco Master Service Contract based on the policy considerations enunciated by the Supreme Court in *Bisso v. Inland Waterways Corp.*, 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911 (1955). The district court reasoned that the additional assured clause was a means by which the vessel could "contract against her own fault." *See Voisin*, 557 F.Supp. at 723. In *Bisso* the Supreme Court invalidated a towage contract providing that "the towing movement should be at the 'sole risk'" of the barge being towed. 349 U.S. at 86, 75 S.Ct. at 630, 99 L.Ed. at 915. The Court stated that historically, the two main reasons for invalidating exculpatory clauses had been "(1) to discourage negligence by making wrongdoers pay damages, and (2) to protect those in need of goods or services from being overreached by others who have power to drive hard bargains." 349 U.S. at 91, 75 S.Ct. at 632–33, 99 L.Ed. at 918 (footnotes omitted). These reasons justified invalidating exculpatory clauses in towing contracts given the nature of the industry and the vessel owner's need to operate "free of monopolistic compulsions." *Id.*

The district court's reliance on *Bisso* as support for its invalidation of the Odeco Master Service Contract is unsound because it is based on the erroneous assumption that an additional assured clause is by definition exculpatory. In *Twenty Grand Offshore, Inc. v. West India Carriers, Inc.*, 492 F.2d 679 (5th Cir.), *cert. denied*, 419 U.S. 836, 95 S.Ct. 63, 42 L.Ed.2d 63 (1974) (footnote omitted), we rejected the contention that "compulsory insurance clauses are exculpatory *per se* in the context of *Bisso*." *See id.* at 683. The purpose of insurance procurement provisions "may well be merely to allocate initially the bur-

---

be on board an Odeco vessel, but working under contract for a third party (in this case, Shell Oil Company). In either situation, the Master Service Contract was the operative agreement establishing the rights and liabilities of the parties. In all likelihood, the cost of Rig Hammers' services was effected by its contractual obligation to name Odeco as an additional assured on its liability insurance policies. Under these circumstances, we cannot accept Rig Hammers'

contention that the agreement was not supported by sufficient consideration.

**3.** Although the ITS–Zim contract was modified to eliminate the coinsured provision prior to Price's injury, the coinsured endorsement was still in effect at the time of Price's injury. 616 F.2d at 427–28.

den of procuring insurance." *Price*, 616 F.2d at 429. Moreover, there is no evidence indicating that the terms of the Master Service Contract were the product of oppressive or overreaching conduct on Odeco's part.

█ In conclusion, we hold that Rig Hammers breached the Odeco Master Service Contract by failing to add Odeco as an additional assured in the unqualified manner directed by paragraph 8(f) of the contract. Consequently, Odeco was forced to pay money to Voisin and Gray & Company, Inc., that it would not have owed in the absence of Rig Hammers' breach. Additionally, Odeco was forced to incur legal fees as a result of Rig Hammers' breach of the Master Service Contract. The question of attorney's fees was never reached by the district court. On remand, the court should rule on the availability, if any, and the amount of attorney's fees to which Odeco claims it is entitled.

REVERSED and REMANDED.