**DIAMOND OFFSHORE CO., et al.**

v.

**A&B BUILDERS, INC.**

**No. Civ.A. G–99–417.**

United States District Court,
S.D. Texas,
Galveston Division.

Nov. 18, 1999.

Kenneth Ross Citti, Citti & Crinion, Houston, TX, for Diamond Offshore Company, Diamond Offshore U.S.A., Inc., Diamond Offshore Drilling, Inc., plaintiffs.

Richard C. Rutledge, III, Wetzel Henri and Drucker, Houston, TX, for A & B Builders, Inc., defendant.

### ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

KENT, District Judge.

This is a declaratory judgment action brought by Diamond Offshore Company and various related entities (collectively "Diamond"). Diamond seeks to have the Court determine the validity of a reciprocal indemnity provision in a contract between Diamond and A & B Builders, Inc. ("A & B"). In addition, Diamond asks the Court to determine it rights under a provision of the contract requiring A & B to name Diamond as an additional insured under A & B's insurance policies. Now before the Court are A & B and Diamond's cross motions for summary judgment. Diamond contends that the indemnity agreement and the additional-insured provisions are both valid as a matter of law; A & B contends that, as a matter of law, neither is valid. For the reasons set forth below, Diamond's Motion is **GRANTED,** and A & B's Motion is **DENIED.**

## I. Factual Summary

Diamond explores and drills for offshore oil and gas. A & B is a contractor offering repair and fabrication services for offshore oil platforms and drilling rigs. A & B and Diamond entered into a Master Service Contract, the ninth paragraph of which contains a reciprocal indemnity provision. This reciprocal indemnity provision expressly applies to claims for bodily injury, and specifically includes claims for bodily injury which result from the negligence of the indemnitee. Thus, in the event a Diamond employee is injured by the negligence of A & B, Diamond agreed to indemnify A & B for any claims the Diamond employee might assert against A & B. Likewise, should an A & B employee assert claims for bodily injury against Diamond based on Diamond's negligence, A & B agreed to indemnify Diamond for its losses.

Under the eighth paragraph of the Master Service Contract, A & B is also obligated to purchase various insurance policies and name Diamond as an additional insured under those policies. The contract sets out what sort of insurance policies A & B is required to obtain, establishes the minimum coverage limits of these policies, and obligates A & B to waive subrogation against Diamond and name Diamond as an "Additional Named Assured."

Lee McMillon, an employee of A & B, was allegedly injured while working aboard the *Ocean Concorde*, a semi-submersible drilling rig owned and operated by Diamond. What triggers the dispute over the reciprocal indemnity provision and the additional-insured provision is that McMillon has sued Diamond in the 212th Judicial District Court of Galveston County, Texas. Diamond contends that A & B has refused to act in accordance with the indemnity provision, and has further refused to reveal whether it obtained liability insurance coverage naming Diamond as an additional insured.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *see also Celotex·Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510.

The parties contend, and the Court agrees, that the rights and obligations of Diamond and A & B under the Master Service Contract are ripe for summary adjudication. Interpreting contractual language and determining the legal validity of contractual provisions are purely questions of law. *See Seal Offshore, Inc. v. American Standard, Inc.,* 736 F.2d 1078, 1080 (5th Cir.1984).

## III. The Reciprocal Indemnity Provision

Plaintiff Diamond contends that the reciprocal indemnity provision is valid under maritime law. *See Hardy v. Gulf Oil Corp.,* 949 F.2d 826, 834 (5th Cir.1992) ("Express contractual indemnity agreements generally are enforceable under maritime law."); *Thurmond v. Delta Well Surveyors,* 836 F.2d 952, 952 (5th Cir.1988) (recognizing that if a contract was governed by maritime law, then an indemnity provision applied to barge worker's personal injury claim); *Theriot v. Bay Drilling Corp.,* 783 F.2d 527, 538–39 (5th Cir. 1986) (finding that because maritime law, not state law, applied to contract between vessel owner and operator of oil lease, indemnity provision was valid). Diamond also recognizes that before a court will enforce an indemnity clause for an indemnitee's own negligence, the clause must

reflect the intention of the parties, be clearly and unequivocally expressed, and be specific and conspicuous. *See Orduna S.A. v. Zen–Noh Grain Corp.,* 913 F.2d 1149, 1153 (5th Cir.1990) (intention of the parties); *Seal,* 736 F.2d at 1081 (unequivocally expressed).

Defendant A & B advances two arguments in support of its contention that the reciprocal indemnity agreement is invalid. First, A & B argues that the indemnity provision is void because it directly contravenes § 905(b) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"). *See* 33 U.S.C. § 905(b). Second, Defendant maintains that state law, not maritime law, governs the Master Service Contract, and state law invalidates the indemnity provisions at issue.

Defendant's first argument is straightforward. Section 905(b) provides that:

> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person ... may bring an action against such vessel as a third party ... and the employer shall not be liable to the vessel for such damages directly or indirectly, and any agreements or warranties to the contrary shall be void.

Since McMillon, an employee of A & B, has sued Diamond, the owner of the *Ocean Concorde,* A & B claims that the Master Service Contract is precisely the sort of "agreement or warranty to the contrary" that § 905(b) renders void. *See Voisin v. ODECO Drilling Co.,* 744 F.2d 1174, 1176 (5th Cir.1984) (affirming trial court's finding that § 905(b) invalidates an indemnity agreement between a vessel owner and the injured worker's employer).

Defendant's second argument is equally straightforward. Both Texas and Louisiana law forbid the sort of indemnity agreements at issue in this dispute. The Louisiana Oilfield Indemnity Act provides that:

> any provision contained in ... an agreement pertaining to a well for oil ... is void as unenforceable to the extent that it purports to ... provide for defense or indemnity, or either, to the indemnitee

against loss or liability for damages arising out of death or bodily injury to persons ...

*See* La.Rev.Stat.Ann. § 9:2780 (West 1991). Texas has a similar prohibition. *See* Tex.Civ.Prac. & Rem.Code Ann. § 27.001, et seq. (Vernon 1986).

State law might apply in either of two ways. It might apply of its own force, or it might apply as surrogate federal law pursuant to the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1333(a)(2)(A). Section 1333(a)(2)(A) provides that:

> To the extent that they are applicable and not inconsistent with this subchapter or other Federal laws ... the civil and criminal laws of each adjacent State ... are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial island and fixed structures erected thereon.

*See Brennan v. Shell Offshore, Inc.,* 612 So.2d 929, 930 (La.Ct.App.1993) (holding that if a contract is not maritime in nature, Louisiana law will apply of its own force, and "an indemnity agreement may be declared null and void under the Louisiana Oilfield Indemnity Act"); *Hodgen v. Forest Oil,* 87 F.3d 1512, 1523–29 (5th Cir. 1996) (finding that, pursuant to the OCSLA, the anti-indemnity provisions of Louisiana law applied as surrogate federal law and governed a contract between an oil platform owner and the employer of an injured contractor).

### A. *Applicability of State Law*

■ The Court will first address Defendant's argument that state law invalidates the indemnity provision. The natural starting point for this analysis is to determine whether the Master Service Contract is a maritime contract. *See Wagner v. McDermott,* 79 F.3d 20, 22 n. 4 (5th Cir. 1996) ("Because maritime law enforces indemnity provisions, addressing the applicability of maritime law to a contract as a threshold inquiry is logical, efficient, and

certainly not error."). Determining whether a contract is a maritime contract governed by maritime law depends partly on "its historical treatment in the jurisprudence", and partly on a six pronged "fact specific inquiry." *Davis & Sons, Inc. v. Gulf Oil Corp.*, 919 F.2d 313, 316 (5th Cir.1990).

█ The Master Service Agreement satisfies the "historical treatment" aspect of the *Davis* test. In contrast to fixed drilling platforms, which are considered artificial islands, the *Ocean Concorde*, a semi-submersible drilling rig, qualifies for vessel status. *See Herb's Welding v. Gray*, 470 U.S. 414, 416 n. 2, 105 S.Ct. 1421, 1424 n. 2, 84 L.Ed.2d 406 (1985) (distinguishing between fixed and floating oil rigs); *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969) (treating fixed platforms as artificial islands); *Bommarito v. Penrod Drilling Corp.*, 929 F.2d 186, 187 (5th Cir.1991) (semi-submersible drilling rig considered a vessel for purposes of Jones Act recovery); *Bridges v. Penrod Drilling Co.*, 740 F.2d 361, 362 (submersible drilling rig located in Gulf of Mexico 200 miles of Louisiana coast); (*Menard v. Penrod Drilling Co.*, 538 F.2d 1084, 1085 (5th Cir.1976); *Neill v. Diamond M. Drilling Co.*, 426 F.2d 487, 488 (5th Cir.1970)) (submersible drilling barge). At the time of his injury, McMillon was welding a pollution pan onto the *Ocean Concorde* so that it would be fit to perform its intended function of offshore oil exploration. In other words, McMillon's work can be characterized as vessel repair, an activity traditionally considered maritime in nature. *See New Bedford Dry Dock Co. v. Purdy*, 258 U.S. 96, 99–100, 42 S.Ct. 243, 244, 66 L.Ed. 482 (1922); *Southwest Marine of San Francisco, Inc., v. United States*, 896 F.2d 532, 533 (Fed.Cir.1990); *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1187 n. 16 (5th Cir.1984); *Northwest Marine Iron Works v. United States*, 203 Ct.Cl. 629, 493 F.2d 652, 653 (1974) Consequently, the "historical treatment" aspect of the *Davis* test is satisfied by the Master Service Contract at issue.

The other aspect of the Davis test is a six pronged "fact specific inquiry." In determining whether a blanket Master Service Contract and its related work order, read together, should be characterized as maritime in nature, a court is to consider six questions. *See Davis*, 919 F.2d at 316. The six *Davis* questions, along with what the Court finds to be their answers, are set out below:

1) What does the specific work order in effect at the time of injury provide? [The work order provided that A & B would supply labor and materials to repair the *Ocean Concorde*.]

2) What work did the crew assigned under the work order actually do? [The crew was performing welding services onboard the *Ocean Concorde*.]

3) Was the crew assigned to work aboard a vessel in navigable waters? [At the time of McMillon's accident, the *Ocean Concorde* was located in the Gulf of Mexico, more than 100 miles off the coast of Louisiana.]

4) To what extent did the work being done relate to the mission of that vessel? [Welding a pollution pan to the *Ocean Concorde* was necessary to allow the vessel to accomplish its mission of exploring for oil and gas in the Gulf. (The *Ocean Concorde* has previously been cited by the EPA for improperly allowing drilling mud to be spilled into the Gulf) ]

5) What was the principal work of the injured worker? [McMillon's principal work was that of a welder.]

6) What work was the injured worker actually doing at the time of the injury? [McMillon was welding inside the pollution pan, where he was allegedly injured when drilling mud was spilled onto him.]

The Court finds that the answers to the six *Davis* questions all support characterizing the Master Service Contract and its related work order as a maritime contract. Since both the "fact specific inquiry" and the "historical treatment" aspects of the *Davis* test are satisfied, the Court finds the indemnity provision at issue to be con-

tained within a maritime contract, and governed by maritime law. Consequently, contrary to Defendant's suggestion, state law does not apply of its own force.

■ Might state law apply as surrogate federal law pursuant to the Outer Continental Shelf Lands Act? To answer that question, three factors must be considered. *See Union Texas Petroleum Corp. v. PLT Engineering*, 895 F.2d 1043, 1047 (5th Cir. 1990) (articulating three factor test); *Hodgen*, 87 F.3d at 1526 ("[t]he proper test for deciding whether state law provides the rule of decision in an OCSLA case remains the three-part *PLT* test."). For state law to apply as surrogate federal law in an OCSLA case, the controversy must 1) arise on a situs covered by the OCSLA; 2) federal maritime law must not apply of its own force; and 3) the state law must not be inconsistent with Federal law. *See PLT Engineering*, 895 F.2d at 1047.

■ With regard to the second prong of the *PLT* test, there is no difference "between deciding whether a contract is maritime and whether maritime law applies of its own force" because "these two inquiries are identical in the context of oilfield indemnity disputes in the OCSLA context." *Hodgen*, 87 F.3d at 1524–26. Because the Court has already concluded that the contract at issue is maritime, the second element of the PLT test is not satisfied, and consequently state law cannot apply as surrogate federal law via the OCSLA.

Since state law cannot apply of its own force, nor as surrogate federal law via the OCSLA, Defendant's argument that state law anti-indemnity provisions govern the Master Service Contract necessarily fails.

### B. The § 905(b) Prohibition

A & B's second argument for finding the indemnity provision void as a matter of law

is that § 905(b) of the LHWCA prohibits such agreements. *See* 33 U.S.C. § 905(b); *see also Voisin*, 744 F.2d at 1176 (invalidating an indemnity agreement under § 905(b)). In response, Plaintiff Diamond argues that while § 905(b) may invalidate *some* indemnity agreements, § 905(c) carves out an exception for reciprocal indemnity agreements applicable to injuries incurred as the result of operations over the Outer Continental Shelf.[1] The 1984 decision is *Voisin* is readily distinguishable because § 905(c) applies only to injuries suffered after September 28, 1984. Thus to resolve this dispute, the Court must carefully analyze the interplay between the § 905(b) prohibition and the § 905(c) exception to the prohibition.

■ Section 905(b) of the Longshore and Harbor Workers' Compensation Act allows an injured non-seaman to pursue a cause of action against the owner of a vessel for injuries received as a result of the negligence of that vessel. *See* 33 U.S.C. § 905(b). There are three ways an injured non-seaman can qualify for such a cause of action. First, and most straightforwardly, the worker might qualify solely by virtue of § 905(b), which requires satisfying both the situs and status requirements of the LHWCA. *See Director v. Perini North River Assocs.*, 459 U.S. 297, 314, 103 S.Ct. 634, 645, 74 L.Ed.2d 465 (1983) (describing status and situs test); *Green v. Vermilion*, 144 F.3d 332, 334 (5th Cir.1998) (applying test). Second, if a worker does not meet the status and situs tests under the LHWCA, but is injured as the result of oil and gas operations conducted on the outer Continental Shelf, a § 905(b) action against the vessel is available pursuant to the Outer Continental Shelf Lands Act and the LHWCA. *See* 33

---

1. If § 905(c) applies, there is an additional reason to reject the possibility that the OCSLA imports state law as surrogate federal law. The third prong of the *PLT* test requires that for state law to be imported as surrogate federal law, it must not be inconsistent with Federal law. *See PLT Engineering*, 895 F.2d at 1047. Section 905(c) validates certain in-

demnity provisions; a state law which invalidates these provisions is patently inconsistent with federal statutory law. *See Lewis v. Diamond Services*, 637 So.2d 825, 829 (La.Ct. App.1994) (finding the Louisiana Oilfield Indemnity Act to be inconsistent with § 905(c), and thus inapplicable to the indemnity provision at issue).

U.S.C. § 905(c); 43 U.S.C. § 1333(b); *see also Masinter v. Tenneco Oil Co.,* 867 F.2d 892, 896 (5th Cir.1989), *modified on other grounds,* 934 F.2d 67 (5th Cir.1991) (recognizing that a non-seaman who fails to qualify under the LHWCA may nevertheless qualify under the OCSLA). Third, it is possible for a worker to simultaneously qualify under both the LHWCA and under the OCSLA. A double qualifying worker would have to satisfy the status and situs tests of the LHWCA, and suffer injury as the result of mineral operations over the outer Continental Shelf.

Section 905(c) provides, in relevant part: Nothing contained in subsection (b) of this section shall preclude the enforcement according to its terms of any reciprocal indemnity provision whereby the employer of a *person entitled to receive benefits under this chapter by virtue of section 1333 of Title 43* and the vessel agree to defend and indemnify the other for the cost of defense and loss or liability for damages arising out of or resulting from death or bodily injury to their employees (emphasis added)

The italicized portion of § 905(c) provides the key to proper analysis of Defendant's argument.

In order to assess the validity of Defendant's argument that § 905(b) prohibits the reciprocal indemnity provision, the court will analyze all four of the logically possible employment classifications McMillon might fall under. If the § 905(b) prohibition does not apply in any of the possible classifications, then Defendant's argument fails as a matter of law.

The first possibility is that McMillon is not covered by the LHWCA at all, neither under the LHWCA directly nor via the OCSLA. If so, then Defendant's § 905(b) argument is a non-starter. Section 905(b) applies only to "a person covered by this chapter" whose injury is "caused by the negligence of a vessel."

The second possibility is that McMillon might fail to qualify under the LHWCA directly, but qualify via the OCSLA. If so, then although § 905(b) applies, the § 905(c) exception also applies, and the reciprocal indemnity agreement is valid. *See Wagner v. McDermott,* 79 F.3d 20, 22 (5th Cir.1996) ("If the plaintiff is an OCS-LA worker, the proscription of § 905(b) is removed to the extent that the indemnity provisions are reciprocal and are between the employer and a vessel"); *Campbell v. Sonat Offshore Drilling, Inc.,* 979 F.2d 1115, 1124–26 (upholding validity of reciprocal indemnity agreement under § 905(c), even though indemnitee was not a signatory to contract); *Gilbert v. Offshore Production & Salvage,* No. 95–122, 1997 WL 149959 at *9 (E.D.La. March 21, 1997) (Schwartz, J.) (finding that "section 905(c) overrides section 905(b) and allows enforcement" of an indemnity agreement); *Lewis v. Keyes 303 Inc.,* 834 F.Supp. 191, 194 n. 3 (Kent, J.) (recognizing existence of § 905(c) exception where indemnity provisions are reciprocal).

The third possibility is that McMillon qualifies under both the LHWCA and under OCSLA. If so, then § 905(c) again overrides the § 905(b) prohibition. There is no reason to suppose that the § 905(c) exception is available only to those workers who qualify *solely* by virtue of the OCSLA. So long as they are "persons entitled to receive benefits under this chapter by virtue of section 1333 of Title 43", the § 905(c) exception applies. *See Campbell v. Offshore Pipeline,* No. 92–1189, 1993 WL 302623 (E.D.La. Aug.5, 1993) (Sear, J.) (rejecting contention that § 905(c) should be interpreted to apply only to employees qualifying for LHWCA exclusively by virtue of the OCSLA); *Gilbert,* 1997 WL 149959 at *9 n. 35 ("there is nothing in the language of the provision that would indicate that a worker must be eligible for LHWCA benefits only through the OCSLA").

Defendant's argument that § 905(b) invalidates the indemnity agreement has plainly failed in the three possibilities examined thus far. The fourth possibility, that McMillon qualifies under the LHWCA directly, but not under the OCSLA, is less

easily dismissed. If McMillon does not qualify under the OCSLA, then he is not "a person entitled to receive benefits under this chapter by virtue of section 1333 of Title 43" and thus, by its own terms, the § 905(c) exception is unavailable. But if McMillon nevertheless qualifies under the LHWCA, then the § 905(b) prohibition is fully operative. *See Voisin,* 744 F.2d at 1176. Consequently, if it is possible for McMillon to fall within this fourth classification, it is at least possible that § 905(b) invalidates the indemnity agreement at issue in this case, which might preclude summary judgment for Plaintiff Diamond.

The Court concludes that McMillon cannot fall within this fourth category. To do so, McMillon would have to qualify under the LHWCA directly, yet not qualify under the OCSLA. Unfortunately for Defendant, the test for OCSLA coverage is more permissive that the test for LHWCA coverage.

In order to qualify under the OCSLA, an employee must 1) satisfy a situs test, by suffering injury either on a fixed platform over the outer Continental Shelf, or over the waters of the Continental Shelf and 2) satisfy a "but for" test. *See Mills v. Director,* 877 F.2d 356, 362 (5th Cir. 1989) (en banc). The "but for" test is satisfied if the injury would not have occurred but for the extractive mineral operations over the shelf. *See id.; Herb's Welding v. Gray,* 766 F.2d 898, 900 (5th Cir.1985).

To qualify under the LHWCA, a worker must satisfy both a situs and status test. *See Perini North River Assocs.,* 459 U.S. at 314, 103 S.Ct. at 645; *Green,* 144 F.3d at 334. The status test is satisfied if the employee is "engaged in maritime employment." *See* 33 U.S.C. § 902(3); *Herb's Welding v. Gray,* 470 U.S. at 415, 105 S.Ct. at 1423. If the injury occurs over navigable water, then the situs test is satisfied. *See Green,* 144 F.3d at 334.

Under the circumstances of this case, the court concludes that it is not possible for McMillon to fall within the fourth category, that is, to qualify under

the LHWCA directly, yet fail to qualify under the OCSLA. McMillon was employed as a welder, and was injured in the Gulf of Mexico more than 100 miles off the Louisiana coast. Since he was injured on the navigable waters overlying the outer Continental Shelf, the situs prongs of both the LHWCA and the OCSLA test are clearly satisfied. Moreover, the "but for" test for OCSLA coverage is certainly satisfied: the *Ocean Concorde* was engaged in offshore mineral extracting activities; the *Ocean Concorde* needed a pollution pan in order to explore for offshore oil; and McMillon would not have been injured but for the need to weld a pollution pan onto the *Ocean Concorde.*

Of course, McMillon's employment as a welder on a vessel may well constitute "maritime employment", and thus satisfy the LHWCA status test. The crucial point is that this conclusion is open to more doubt than the conclusion that McMillon satisfies the OCSLA "but for" test. *See Herb's Welding,* 470 U.S. at 424, 105 S.Ct at 1428 (holding that a welder who built and maintained pipelines on a fixed platform did not satisfy the LHWCA status test). The Court concludes that it is not possible for McMillon to qualify under the LHWCA yet fail to also qualify under the OCSLA. Thus, in each of the four possible situations, Defendant's argument that § 905(b) prohibits the indemnity agreement has failed.

Before leaving the topic of § 905(c), it may be helpful to diagnose the fallacy underlying a superficially cogent argument offered by Defendant. A & B argues that Diamond's position with respect to the OCSLA is inconsistent: Diamond invokes the OCSLA in order to reap the benefits of the § 905(c) exception, yet rejects the OCSLA in order to avoid the importation of the Louisiana Oilfield Indemnity Act as surrogate federal law.

There is no genuine inconsistency in Diamond's position. In the context of this controversy, the OCSLA has two separate and distinct functions. First, the OCSLA

acts to import state law as surrogate federal law in those cases where otherwise there would be a gap in federal law. If the express statutory command of § 905(c) applies, there is no gap in federal law, and thus no occasion for the OCSLA to import state law as a gap-filler. The other function of the OCSLA is to create a § 905(b) cause of action for certain off-shore workers. In the event an offshore worker sues under this cause of action, that suit may implicate an indemnity agreement, which is valid pursuant to § 905(c). Providing a cause of action, and supplying gap-filling law are two entirely different functions. It is not at all paradoxical that the OCSLA might "apply" in the sense of giving an offshore worker a cause of action and his employer the benefits of a reciprocal indemnity agreement, and yet not "apply" in the in the sense of not importing state law. *See Gilbert*, 1997 WL 149959 at *8 (reaching same conclusion).

Section 905(b) does not invalidate the indemnity provisions of the Master Service Contract. The anti-indemnity provisions of state law do not govern the contract. Because the Court finds that A & B is obligated to indemnify Diamond under the contract, Diamond's Motion for Partial Summary Judgment on this issue is **GRANTED.** A & B's opposing Motion for Partial Summary Judgment is **DENIED.**

### IV. The Additional–Assured Provision

The eighth paragraph of the Master Service Contract obligated A & B to procure various insurance policies with stated minimum limits. Also contained within the eighth paragraph is a "name and waive" provision: A & B was required to name Diamond as an "Additional Named Assured" and waive claims for subrogation against Diamond. A & B has not revealed whether it complied with these provisions. Diamond contends that if A & B has failed to procure the required insurance policies,

that failure constitutes breach of contract, making A & B liable for damages caused by A & B's failure to satisfy its contractual obligations.

A & B responds by pointing to the language of the eighth paragraph of the Master Service Agreement which provides:

the insurance requirements set forth herein are *supplementary to* and shall not limit or restrict as to amount, extent, or otherwise the indemnity obligations undertaken by [A & B] in Paragraph (9) herein (emphasis supplied by A & B)

Subsection (f) of Paragraph (8) further provides:

The naming of [Diamond] as additional insured and endorsement as respects primary insurance *shall only apply as respects liability assumed by [A & B] herein* (emphasis supplied by A & B)

A & B argues that this language does not create an independent obligation to name Diamond as an additional assured, but rather creates a contingent obligation designed to assure performance of the reciprocal indemnity provision. Since, according to A & B, the indemnity provision is void, the contingent obligation to name Diamond as an additional assured fails as well.

The Court is not persuaded by this argument. As previously explained, the indemnity provision is not void, but perfectly valid under maritime law.[2] Thus even if the additional-assured provision is a contingent obligation, A & B was obligated to procure the insurance in order to satisfy its obligations under the entirely valid indemnity provision.

■ Moreover, the additional-assured provision is not a contingent obligation. The Court notes that while an additional-assured provision may appear functionally equivalent to an indemnity provision,

---

**2.** The Louisiana Oilfield Indemnity Act explicitly voids such insurance procurement clauses unless the indemnitee pays the cost of obtaining coverage. *See* La.Rev.Stat.Ann. § 9:2780(G); *see also Marcel v. Placid Oil Co.,*

11 F.3d 563, 569 (5th Cir.1994). As previously explained, maritime law, not state law, governs the Master Service Contract at issue in this case.

§ 905(b) does *not* undermine the validity of an additional-assured provision which operates in favor of a vessel owner. *See Voisin,* 744 F.2d at 1177–78. As previously discussed, *Voisin* involved an injury suffered before the effective date of § 905(c); consequently the Fifth Circuit upheld the district court's conclusion that § 905(b) invalidated an indemnity agreement between a vessel owner and a stevedore. *See id.* But the additional-assured provision was held valid. *See id.* ("the legislative history of section 905(b) does not support the district court's construction of the statute ... that the additional assured provision of the Master Service Contract results in a proscribed form of indirect liability."). Since an additional-assured provision may be valid even though an indemnity provision fails, it is possible for an additional-assured provision to create an entirely independent contractual obligation.

The Court is unconvinced that the language A & B has identified was intended to create only a contingent obligation on A & B's part to name Diamond as an additional assured. The Fifth Circuit recently rejected this same argument as it was applied to very similar contractual language. *See LeBlanc v. Global Marine Drilling Co.,* 193 F.3d 873, 875–76 (5th Cir.1999). In *LeBlanc,* the contract provided that *"to the extent Subcontractor assumes liability hereunder,* and agrees to indemnify Contractor, Contractor shall be named as an additional insured in [certain] insurance policies." *Id.* (emphasis added). The defendant in *LeBlanc* argued that this language meant that its obligation to abide by the additional-assured provision was not an independent obligation, but was instead contingent upon the validity of the indemnity provision. *See id.* The *LeBlanc* court rejected this claim. "If the parties had determined to condition [the indemnitee's] assured status upon the legal enforceability of the indemnity agreement, they very easily could have done so." *Id.*

Likewise, if A & B and Diamond had meant to condition Diamond's assured status upon the validity of the reciprocal indemnity provision, they easily could have done so. If that was truly their intent, A & B and Diamond could easily have chosen plainer language to express that intent, and would have eschewed such ambiguous phrases as "supplementary to" and "only apply as respects liability assumed herein". Their failure to employ plainer language indicates that there was no intention to make the additional-assured provision contingent upon the validity of the indemnity provision. On the contrary, the more natural reading of the contract is that A & B agreed to indemnify Diamond, and *concomitantly* agreed to name Diamond as an additional assured. *See id.* The Court concludes that the additional-assured provision does not depend on the validity of the indemnity provision, but is instead an independent obligation under the Master Service Contract. A & B was obligated to procure the requisite insurance and name Diamond as an additional assured. If A & B has failed in this regard, that failure constitutes a breach of contract for which Diamond is entitled to recover damages. *See Voisin,* 744 F.2d at 1179. Accordingly, Diamond's Motion for Partial Summary Judgment on this issue is **GRANTED,** and A & B's opposing Motion for Partial Summary Judgment on this issue is **DENIED.**

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Partial Summary Judgment is **GRANTED;** Defendant's Motion for Partial Summary Judgment is **DENIED.** The parties are **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider or the like. The parties are also **ORDERED** to bear their own taxable costs and expenses incurred herein to date.

**IT IS SO ORDERED.**