Danny TULLOS, Plaintiff,

v.

CAL DIVE INTERNATIONAL, INC., et al. Defendants.

No. CIV.A.G–01–192.

United States District Court, S.D. Texas, Galveston Division.

March 4, 2002.

Michael John Maloney, Maloney, Martin & Mitchell, Houston, TX, for Danny Tullos.

Steven Lynn Roberts, Fulbright & Jaworski, Charles Douglas Wheat, Killeen & Wheat, Houston, TX, for Cal Dive International Inc, Cal Dive Offshore Ltd., Racal NCS Inc., Individually aka Racal Survey USA Inc., Racal Survey USA Inc., Individually aka Racal NCS Inc., NCS International Inc., Individually aka Racal NCS Inc. aka Racal Survey USA Inc., Secunda Marine Services Ltd., M/V Balmoral Sea, In Rem.

### *ORDER GRANTING CAL DIVE'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON ITS CROSS-CLAIMS FOR INDEMNITY AND INSURANCE AND INVITING CAL DIVE'S SUBMISSION REGARDING ATTORNEYS' FEES AND COSTS*

KENT, District Judge.

On April 4, 2001, Plaintiff Danny Tullos ("Tullos") filed this maritime lawsuit against Defendants Cal Dive International, Inc. ("CDI"); Cal Dive Offshore, Ltd. ("CDO"); Racal NCS, Inc., individually and a/k/a Racal Survey, U.S.A., Inc. and/or NCS International, Inc.; Racal Survey U.S.A., Inc., individually and a/k/a Racal NCS, Inc. and/or Racal Survey U.S.A., Inc.; and the M/V BALMORAL SEA, *in rem*, seeking damages pursuant to the general maritime law and the Jones Act, 46 U.S.C. § 688. On June 29, 2001, Defendants CDI and CDO (collectively "Cal Dive") filed cross-claims against Defendant Racal Survey U.S.A., Inc. ("Racal") for contractual indemnity and insurance pursuant to a Master Service Contract ("MSC") entered into by CDI and Racal in June of 1996.[1] Now before the Court is

---

1. In a prior submission to the Court, Racal argues that CDO is not entitled to insurance or indemnity under the MSC because CDO is not a party to the contract. The Court finds this argument fatally flawed, however, be-

Cal Dive's second Motion for Partial Summary Judgment on its cross-claims against Racal for insurance and indemnity.[2] After considering the instant Motion, Racal's Response, the summary judgment evidence submitted by both Parties and the applicable law, the Court concludes that Cal Dive's Motion for Partial Summary Judgment on its cross-claims against Racal for both indemnity and insurance is hereby **GRANTED**.

## I.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When one party moves for summary judgment, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See*

*id.* at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. Nevertheless, if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Cas. Co.*, 799 F.Supp. 691 (S.D.Tex. 1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

## II.

Pursuant to the master contract, Racal provided Cal Dive with navigational and surveying services that aided in Cal Dive's offshore operations.[3] In order to properly

---

cause the express language of the MSC provides that Racal's insurance and indemnity obligations run to CDI and its "joint interest owners, joint venturers, its parent, subsidiary, affiliated and related companies, vessels owned, operated and/or chartered by [CDI]." Given that the summary judgment evidence conclusively establishes that CDO is a wholly owned subsidiary of CDI, CDO is most certainly covered by the MSC's insurance and indemnity provisions. Accordingly, the Court emphasizes that the instant Order applies with equal force to Racal's obligations regarding both CDI and CDO.

**2.** On December 6, 2001, the Court denied Cal Dive's first Motion for Partial Summary Judgment on its cross-claims as premature. However, the Court expressly invited Cal Dive to re-file that Motion after further discovery. Cal Dive filed the instant Motion pursuant to that invitation.

**3.** The MSC does not expressly define the type of "services" that Racal was providing to Cal Dive. However, other summary judgment evidence elaborates upon this issue. First, in his deposition, Cal Dive Project Manager Mike Ferguson stated that "[Cal Dive] contracted [Racal] to provide surveying services. [Racal] would verify that the DSV, the diving support vessel, of the Balmoral Sea was on the proper location. They would verify that the items we were installing were installed in the proper location. And then they would record the information so it could be documented and passed on to the client for his use." Second, Tullos stated at his deposition that he was a "surveyor/navigator dealing in-with GPS" and that "Racal was-it's a marine, I guess you can say, navigation company... we're just positioning, you know." Likewise, in its Response to Cal Dive's Motion for Partial Summary Judgment, Racal acknowledges that it was providing "surveying services to assist in

render such services to Cal Dive, Racal placed Global Positioning Systems ("GPS") and fully trained personnel capable of operating GPS equipment, such as Tullos, on vessels where Cal Dive employees were working. Tullos was working aboard the M/V BALMORAL SEA in the Gulf of Mexico in the spring of 1998. As his primary duty, Tullos provided the captain of the M/V BALMORAL SEA with continuously updated GPS-generated navigational data from his post on the vessel's bridge. The captain then used this navigational data to make certain that the individuals diving from the M/V BALMORAL SEA's diving support vessel were executing their "mat-placement" operation correctly. This operation required the divers to place "mats" above an existing pipeline to mark the location of a future pipeline. Tullos provided the captain and divers with directional information that allowed them to orient these mats correctly. On April 2, 1998, Tullos claims to have injured his back while carrying his GPS equipment down two flights of stairs.

## III.

In Paragraph IX of the MSC, entitled "Indemnity", Racal stipulated that it would "protect, defend, indemnify and hold harmless Cal Dive...from and against any and all claims, demands, losses and expenses, including court costs and attor-

ney's fees, lawsuits, liabilities or causes of action of every kind and character, in favor of any person or party, for injury or illness or death of...any employees of [Racal]." Cal Dive argues that the MSC is a maritime contract and therefore, this indemnity provision is enforceable under general maritime law. See Hardy v. Gulf Oil Corp., 949 F.2d 826, 834 (5th Cir.1992) ("Express contractual indemnity agreements generally are enforceable under maritime law."); Theriot v. Bay Drilling Corp., 783 F.2d 527, 538 (5th Cir.1986) (holding that because maritime law, not state law, applied to contract between vessel owner and operator of oil lease, indemnity provision was valid); Diamond Offshore Co. v. A & B Builders, Inc., 75 F.Supp.2d 676, 678 (S.D.Tex.1999) (recognizing that if a contract is governed by maritime law, a reciprocal indemnity provision in an agreement between the owner of an offshore oil rig and a service contractor is valid). In response, Racal argues that Louisiana state law, not maritime law, governs the MSC and that Louisiana law forbids the enforcement of the indemnity provisions at issue.[4] Thus, the natural starting point for the Court's analysis is to decide whether the MSC is a maritime contract. See Wagner v. McDermott, 79 F.3d 20, 22 n. 4 (5th Cir.1996) ("Because maritime law enforces indemnity provisions, addressing the applicability of mari-

---

Cal Dive's diving operations" and expressly acknowledges that the "Cal Dive and Tullos depositions indicate that Racal provided surveying and navigational services to Cal Dive."

4. Racal's argument that Louisiana law governs the MSC is straightforward. First, Racal argues that Louisiana law applies as surrogate federal law pursuant to the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1333(a)(2)(A), which provides that: "To the extent that they are applicable and not inconsistent with this subchapter or other Federal laws... the civil and criminal laws of each adjacent state ... are hereby declared to be

the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial island and fixed structures erected thereon." 43 U.S.C. § 1333(a)(2)(A). Racal asserts that (1) the accident occurred in a portion of the Outer Continental Shelf known as Block 226; (2) Block 226 is adjacent to Louisiana; (3) Cal Dive was working on a "pipeline affixed to the Outer Continental Shelf"; and therefore, (4) OCSLA requires that Louisiana law applies in this instance. Next, Racal argues that the Louisiana Oilfield Indemnity Act forbids the sort of indemnity agreement at issue in this dispute. See La.Rev.Stat. § 9:2780.

time law to a contract as a threshold inquiry is logical, efficient, and certainly not error.").

Whether a contract is maritime or non-maritime is not always an easy determination. *See, e.g., J.A.R., Inc. v. M/V Lady Lucille,* 963 F.2d 96, 98 (5th Cir.1992) (noting that not every contract incidentally touching on maritime activities is a maritime contract); *Theriot v. Bay Drilling Corp.,* 783 F.2d 527, 538 (5th Cir.1986) (explaining that for maritime character to attach, "there must be a direct and proximate judicial link between the contract and the operation of the ship . . . ."). To make this determination, the Fifth Circuit employs the two-step test articulated in *Davis & Sons, Inc. v. Gulf Oil Corp.,* 919 F.2d 313 (5th Cir.1990). Under *Davis,* the Court must initially consider the contract's "historical treatment in the jurisprudence" and, next, examine the specific facts of the case. *Id.* at 316; *see also Campbell v. Sonat Offshore Drilling, Inc.,* 979 F.2d 1115, 1121 (5th Cir.1992) (describing the two-step character of the *Davis* test). The second prong of the *Davis* inquiry requires the Court to consider the following six factors: (1) what does the specific work order in effect at the time of the injury provide?; (2) what work did the crew assigned under the work order actually do?; (3) was the crew assigned to work aboard a vessel in navigable waters?; (4) to what extent did the work being done relate to the mission of that vessel?; (5) what was the principal work of the injured worker?; and (6) what work was the injured worker doing at the time of the injury? *See Davis,* 919 F.2d at 316.

According to the Fifth Circuit, a maritime contract is "a contract relating to a ship in its use as such, or to commerce or *navigation on navigable waters,* or to transportation by sea or to maritime employment." *J.A.R.,* 963 F.2d at 98 (quoting *Thurmond v. Delta Well Surveyors,* 836 F.2d 952, 954 (5th Cir.1988)) (emphasis added). In light of the undisputed evidence indicating that Tullos was providing navigational services to a vessel pursuant to the MSC, Fifth Circuit precedent virtually compels the conclusion that the MSC is maritime in nature. Furthermore, the *Davis* factors affirm this result: Racal was hired to provide navigational and surveying assistance; the Racal crew actually performed navigation and surveying tasks; Tullos was working on a vessel over navigable waters; navigation and surveying was an integral part of the mat-placement operation (the primary purpose of the vessel); Tullos's principal work was as a surveyor and navigator; and Tullos was performing a task incident to these services (carrying his GPS equipment) at the time he was injured. Accordingly, all six *Davis* factors point to a singular conclusion—the MSC and the injury that invoked its terms are both clearly "maritime."

Therefore, because both the "historical treatment" and the "fact specific inquiry" aspects of the *Davis* test are satisfied, the Court concludes that the indemnity provision of the MSC falls squarely within a maritime contract, and is therefore governed by maritime law. Consequently, Louisiana law cannot apply as surrogate federal law via OCSLA in this instance. *See Diamond Offshore,* 75 F.Supp.2d at 681 (explaining that because federal maritime law applies of its own force to a maritime contract, state law cannot apply as surrogate federal law via OCSLA). Accordingly, the Court finds that, as a matter of law, Racal is obligated to indemnify Cal Dive pursuant to the unambiguous language of Paragraph IX of the MSC, in which that obligation is clearly, specifically and unequivocally expressed. *See Diamond Offshore,* 75 F.Supp.2d at 678–79. Consequently, Cal Dive's Motion for Partial Summary Judgment is hereby

**GRANTED** with respect to its cross-claim for indemnity.

## IV.

Paragraph VIII of the MSC obligates Racal to obtain and maintain several types of insurance polices, and to name Cal Dive as an additional insured, within stated minimum limits. These policies are meant to protect Cal Dive from liability in the event that an accident occurs involving Racal employees or equipment. Moreover, subsection five of Paragraph VIII provides that if for any reason the insurer/underwriter with whom Racal obtained the required coverage fails to respond and fully protect the interests of Cal Dive, Racal "...shall protect, defend, indemnify and hold harmless Cal Dive...." The obligation created by this language (the obligation to name Cal Dive as an additional-insured) is independent of Racal's duty to indemnify Cal Dive pursuant to Paragraph IX of the MSC. *See LeBlanc v. Global Marine Drilling*, 193 F.3d 873, 875–76 (5th Cir.1999); *Diamond Offshore*, 75 F.Supp.2d at 685. Stated another way, a natural reading of the MSC indicates that Racal agreed to indemnify Cal Dive for any loss arising from this lawsuit and *concomitantly* agreed to name Cal Dive as an additional insured. Therefore, if Racal has failed to name Cal Dive as an additional insured in this regard, that failure constitutes a breach of contract for which Cal Dive is entitled to recover damages. *See Diamond Offshore*, 75 F.Supp.2d at 685. Consequently, Cal Dive's Motion for Partial Summary Judgment is hereby **GRANTED** with respect to its cross-claim for insurance.

## V.

█ As a final matter, Cal Dive seeks to recover attorneys' fees incurred as a result of Racal's posture with regard to its obligations to insure and indemnify Cal Dive. The Fifth Circuit has expressly stated that "under a general indemnity agreement ..., the indemnitee enjoys no right to recover its legal fees incurred in establishing its right to indemnification." *Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 959 (5th Cir.1984) (quoting *Signal Oil & Gas Co. v. Barge W-701*, 654 F.2d 1164, 1178 (5th Cir.1981)). On the other hand, the Fifth Circuit has also clearly held that an indemnitee may recover attorneys' fees and costs incurred in defending against the underlying tort action at issue. *See Weathersby*, 752 F.2d at 959; *Odd Bergs Tankrederi A/S v. S/T Gulfspray*, 650 F.2d 652, 654 (5th Cir. July 1981). Accordingly, the Court hereby **ORDERS** Cal Dive to submit, within thirty days, an affidavit indicating the amount of attorneys' fees and costs that it has incurred that are related *solely* to its defense of the underlying tort action brought against it by Tullos. This figure should not include any attorneys' fees or costs incurred by Cal Dive in establishing its right to indemnification and insurance vis-a-vis Racal. The Court further **ORDERS** that Racal will have fifteen days to submit its Response to Cal Dive's submission. Upon receipt of Cal Dive's Affidavit and Racal's Response thereto, the Court will issue an Order awarding attorneys' fees and costs to Cal Dive, if warranted.

**IT IS SO ORDERED.**