KUHN, Judge.
This is an appeal from a trial court’s judgment granting a motion for summary judgment filed by defendant-appellee, Halliburton Company (“Halliburton”), and ordering defendant Omega Services Inc. (“Omega”) to indemnify and defend Halliburton in this lawsuit. We reverse and remand.
Factual and Procedural Background
On November 10,1994, while in the course .and scope of his employment as a welder helper for Omega, on board a jack-up boat owned by Halliburton, plaintiff, Zachary Via-tor, injured his back as he and two other Omega employees attempted to lift piping to fit into jacks. In November 1995, plaintiff filed a petition for damages naming, inter caeteros Omega, Halliburton and Tanna Oil Company, Inc. (“Tanna”) and their respective insurers as defendants. Plaintiff’s petition alleges that he was in the course and scope of his employment at the time of his injury and asserts a claim of vessel negligence. The petition expressly sets forth alternative claims under theories of liability arising from the Longshoremen and Harbor Workers Compensation Act (33 U.S.C. §§ 901-950) and the Jones Act (46 App. U.S.C. § 688).[1] Halliburton answered the petition and asserted a cross claim against Omega, urging that Omega is obligated to indemnify and defend Halliburton in this lawsuit.[2]
On March 25, 1996, Halliburton filed a motion for summary judgment, urging that pursuant to the terms of a master liability agreement executed between Halliburton and Omega, there were no genuine issues of material fact and Omega was obligated to indemnify and defend the claims asserted against Halliburton by Viator. By judgment dated February 26, 1997, the trial court granted the motion for summary judgment. From this | .^judgment, Omega and its insurer, Lexington Insurance Company (“Lexington”) appeal urging that the trial court’s conclusion is erroneous.
Discussion
A motion for summary judgment is a procedural device used to avoid a full-scale trial where there is no genuine factual dispute. Sanders v. Ashland Oil, Inc., 96-1751, p. 5 (La.App. 1st Cir. 6/20/97); 696 So.2d 1031, 1034, writ denied, 97-1911 (La. 10/31/97); 703 So.2d 29. It should only be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966.
Previously, our cases held that summary judgments were not favored and were to be used cautiously and sparingly. Any doubt was to be resolved against granting the motion and in favor of a trial on the merits. However, in 1996, the legislature amended La.C.C.P. art. 966 to overrule the presumption in favor of trial on the merits. Summary judgments are now favored, and the documents submitted by both parties are to be equally scrutinized. Berzas v. OXY USA, Inc., 29,835, pp. 4-5 (La.App. 2d Cir. 9/24/97); 699 So.2d 1149, 1152; Hayes v. *1284 Autin, 96-287, p. 6 (La.App. 3d Cir. 12/26/96); 685 So.2d 691, 694, writ denied, 97-0281 (La. 3/14/97); 690 So.2d 41.
In 1997, by Act No. 483, the legislature again amended La.C.C.P. art. 966 to incorporate the federal summary judgment analysis. The 1997 amendment to La.C.C.P. art. 966 applies retroactively and is to be utilized by this court in assessing summary judgments granted prior to the effective date of the amendment. Morgan v. The Earnest Corp., 97-0869, p. 7 (La.App. 1st Cir. 11/7/97); 704 So.2d 272, 276, writ denied, 97-3031 (La. 2/20/98); 709 So.2d 775. Under the amended version of La.C.C.P. art. 966, the initial burden continues to remain -with the mover to show that no genuine issue of material fact exists. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action or defense, then the • nonmoving Rparty must produce factual support sufficient to satisfy his evi-dentiary burden at trial. La.C.C.P. art. 966(C)(2). If the nonmoving party fails to do so, there is no genuine issue of material fact and summary judgment should be granted. La.C.C.P. arts. 966 and 967; Berzas, 29,835 at p. 8; 699 So.2d at 1154.
Appellate courts review summary judgments de novo under the same criteria that govern the trial court’s determination of whether is appropriate. Sanders, 96-1751 at p. 7; 696 So.2d at 1035.
In this case, the initial burden of proving entitlement to summary judgment was with Halliburton. In support of its motion, Halliburton introduced the Master Liability Agreement executed in February 1994, between Halliburton and Omega. The Master Liability Agreement provides the following pertinent provisions.
I. Halliburton will allow [Omega], its equipment, and/or its personnel aboard Halliburton-owned vessels at such times and places as the parties agree.
II. Halliburton will allow [Omega] to perform services from the vessel and/or utilize work space or living accommodation space as [Omega] may safely require.
III.In consideration of such use or uses of a Halliburton-owned vessel,
(a) Except as otherwise provided herein below, each party (Indemnitor) will release, defend and indemnify, and hold the other (Indemnitee) harmless from any and all claims, losses; liability, judgments and costs (including court costs and attorney fees) for personal injury or death or property damage or loss to the extent such arises out of or in connection with the negligence of the Indemnitor, its employees, agents, sub-contractors, or invitees.
(b) Each party hereto (Indemnitor) will release, defend and indemnify, and hold the other (Indemnitee) harmless from any and all claims, losses, liability, judgments and costs (including court costs and attorney fees) for personal injury or death of Indemnitor, its employees, sub-contractors, agents or invitees, and their employees, regardless of cause, even if such is caused by any fault, negligence or breach, sole or joint or concurrent, of Indemnitee.
15(c) Each party hereto (Indemnitor) will release, defend and indemnify, and hold the other (Indemnitee) harmless from any and all claims, losses, liability, judgments and costs (including court costs and attorney fees) for property damage or- loss of Indemnitor, its employees, sub-contractors, agents or invitees, and their employees, regardless of cause, even if such is caused by any fault, negligence or breach, sole, joint or concurrent, of Indemnitee.
(d) [Omega] agrees that its use of the vessel is at its own risk.
(e) The parties agree that the indemnity obligations provided herein shall be supported by liability insurance to the maximum permitted by applicable law. [Omega] shall name Halliburton as an additional insured with respect to the liabilities [Omega] has assumed here *1285 under in all of the policies of insurance[.] [Omega] maintains and agrees to obtain from its insurers waivers of subrogation in favor of Halliburton on such policies.
IV. The responsibility for management, navigation and operation of the vessel shall remain with Halliburton.
V. It is the understanding and intention of the parties hereto that [Omega] is onboard Halliburton’s vessel as an independent contractor providing services and/or materials to a third party customer, and that no relationship of master and servant, or principal and agent shall exist between Halliburton and the employees, agents or representatives of [Omega]. (Emphasis supplied.)
Halliburton urges that by the express language of the Master Liability Agreement, the contract is maritime in, nature and subject to enforcement under federal law. Because the reciprocal indemnity provisions are enforceable under federal law, Halliburton asserts, the trial court properly granted summary judgment ordering performance of the indemnity provisions.
Omega and Lexington contend that there is an insufficient factual foundation to ascertain whether the contract is regulated by federal law or state law. Appellants point out that if Louisiana law applies, under the Louisiana Oilfield Indemnity Act l6(“LOIA”), found at La.R.S. 9:2780,[3] the indemnity provisions of the Master Liability Agreement are void and unenforceable.
Because the construction of a maritime contract is governed- by maritime law, Theriot v. Bay Drilling Corp., 783 F.2d 527, 538 (5th Cir.1986), it is necessary to determine whether the agreement between Omega and Halliburton is maritime. Whether a particular contract can be characterized as maritime depends on the nature and character of the contract, not on the situs of its performance or characterization. Id. The true criterion is the nature of the -contract, as to whether it has reference to maritime service or maritime transactions. Id. “A principal determinant is the relation the contract ‘bears to the ship. -... A contract relating to a ship in its use as such, or to commerce ... is subject to maritiihe law.’” Id. (citing 1 Benedict on Admiralty § 183 (7th ed. 1985)). Not every contract touching incidentally on a vessel will be maritime: In order that such maritime character should attach, there must be a direct and proximate juridical link between the Contract and’ the operation of the ship. Id.
In Theriot, the court examined an agreement between a vessel owner and the operator- of an oil and gas lease. Theriot, a specialty worker employed by a third party, was aboard the vessel at the time of his injury. The contract under scrutiny provided that the |7vessel owner would furnish the equipment, materials, supplies, and services necessary tó‘ the drilling and completion óf a well. Recognizing that oil and gas drilling on navigable waters aboard a vessel was indeed maritime, the Theriot court concluded that the indemnity provisions were enforceable under federal law. In so holding, the Theriot *1286 court noted that the contract focused upon the'use of a vessel in a maritime transaction, i.e., the drilling for oil and gas aboard a vessel on navigable waters.
In the case sub judice, Halliburton bears the burden of. showing that the Master Liability Agreement is a maritime.contract. Similar to the contractual provisions under scrutiny in Theriot, under the terms of the Master Liability Agreement, Halliburton maintained responsibility for management, navigation and operation of its vessels which were being used by Omega. Thus, it can be said to be a contract “touching incidentally on a vessel.” Theriot, 783 F.2d at 538. However, the four corners of the Master Liability Agreement do not provide the underlying basis for Omega’s use of the Halliburton’s vessel, except to specify that “[Omega] is onboard Halliburton’s vessel as an independent contractor providing services and/or materials to a third party customer.” In order to determine whether a maritime character should attach to the Master Liability Agreement, Halliburton must prove “a direct and proximate juridical link between the contract and the operation of [the] ship.” Id.
In addition to the pleadings and the Master Liability Agreement, Halliburton presented the deposition testimony of plaintiff, Zachary Viator. Viator testified that he was hired by Omega as a welder’s helper and rigger in October 1994. On the date of the accident, he was aboard a Halliburton jack-up boat which was moored to a platform owned by Tanna Oil.[4] Having been assigned living quarters aboard the jack-up boat, Via-tor estimated that he spent approximately ninety-eight percent of his time on the boat, and only occasionally was he physically on the Tanna Oil platform. Viator was not certain what |8exactly Omega was doing for Tanna Oil. As far as he understood, Tanna Oil “had some kind of piping that was wrong that had to be reconstructed” so as to allow Tanna Oil to get “back on line to produce gas.” Viator stated, “We were trying to get the platform back on line.” According to Viator, “Mr. Milton” of Tanna Oil[5] was in charge of the Halliburton employees. Viator understood that Taima Oil had leased the jack-up boat from Halliburton. Viator agreed that Omega may well have been fabricating pieces of equipment or piping on the jack-up boat to be placed in the platform.
Based on the evidence in this record, we cannot say that Halliburton sustained its burden of proving a direct and juridical link between the Master Liability Agreement executed between Halliburton and Omega and the operation of the Halliburton jack-up boat in its use as a ship. Accordingly, we conclude the trial court erred in granting summary judgment on the showing made by Halliburton.
Conclusion
For these reasons, the trial court’s judgment granting Halliburton’s motion for summary judgment and ordering Omega to indemnify and defend Halliburton is reversed. The matter is remanded for further proceedings. All costs of this appeal are assessed against defendant-appellee, Halliburton Company.
REVERSED AND REMANDED.

. Because Louisiana has a system of fact pleading, see C.C.P. arts. 854 & 862, we note that upon a proper evidentiary showing, plaintiff's factual allegations of injury while in the course and scope of his employment may support recovery under the Louisiana Workers’ Compensation Act (La.R.S. 23:1031-1415), as well as under the Outer Continental Shelf Lands Act (43 U.S.C. §§ 1331-1356).

. Our examination of the record shows that Omega has not filed an answer to Halliburton’s cross claim.

. La.R.S. 9:2780 provides in pertinent part:
A. The legislature finds that an inequity is foisted on certain contractors and their employees by the defense or indemnity provisions, either or both, contained in some agreements pertaining to wells for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, to the extent those provisions apply to death or bodily injury to persons. It is the intent of the legislature by this Section to declare null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for déáth or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee.
B. Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indem-nitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.

. Plaintiffs petition identifies the platform owner as "Tanna Oil”; however, the transcript spells the platform owner’s name "Tana Oil.” We conform our spelling to that indicated in plaintiff's petition.

. Plaintiff consistently referred to the Tanna Oil representative present at the platform as "Mr. Milton”; however, in response to questioning, he indicated that "Mr. Milton" may have been "Milton LeBlanc.”