771 So.2d 679 (2000)
Keith FONTENOT
v.
SOUTHWESTERN OFFSHORE CORPORATION and Pennzoil Exploration and Production Company.
No. 99-1559.
Court of Appeal of Louisiana, Third Circuit.
July 5, 2000.
Writ Denied November 3, 2000.
*681 James P. Ryan, Jeffrey M. Bassett, Opelousas, Louisiana, Counsel for Plaintiff.
Gary P. Kraus, Mark A. Lowe, Lafayette, Louisiana, Counsel for Defendant/Appellant.
John P. Wolff, III, Baton Rouge, Louisiana, Counsel for Defendant.
Michael A. McGlone, William M. Quin, New Orleans, Louisiana, Counsel for Defendant/ Appellee.
Barry L. Domingue, Lafayette, Louisiana, Counsel for Intervenor.
(Court composed of JOHN D. SAUNDERS, JIMMIE C. PETERS, and MICHAEL G. SULLIVAN, Judges.)
SULLIVAN, Judge.
In this maritime personal injury case, the trial court granted summary judgments holding that a contract to perform drilling mud services on a jackup barge on the outer Continental Shelf was nonmaritime; therefore, the Louisiana Oilfield Indemnity Act (LOIA), La.R.S. 9:2780, invalidated its indemnity and additional insured provisions. Because we disagree with the trial court's characterization of the contract as nonmaritime, we reverse the trial court judgments as explained more fully below.

Procedural History
Keith Fontenot, a drilling mud engineer employed by A & W Louisiana, Inc. (formerly Chemrich, Inc.), filed suit under the general maritime law for injuries sustained while working aboard Southwestern Offshore Corporation's Rig # 151 in navigable waters on the outer Continental Shelf. Fontenot was working on Rig # 151 pursuant to a Master Service and Supply Agreement (MSSA) between his employer and Pennzoil Exploration and Production Company. Pennzoil had also contracted with Southwestern to supply a drilling unit and to drill the well.
Defendants, Southwestern and Pennzoil, each filed third party demands for contractual defense and indemnity against A & W Louisiana and its insurer, Indemnity Insurance Company of North America. Presented with cross motions for summary judgment on this issue, the trial court determined (1) because drilling mud services are peculiar to the oil and gas industry rather than to maritime commerce, the contract should be governed by Louisiana *682 law rather than maritime law; (2) Louisiana law did not apply as surrogate federal law under the Outer Continental Shelf Lands Act (OCSLA), at 43 U.S.C. § 1333(a)(2)(A), because the injury occurred on a vessel, which is not an OCSLA "situs;" and (3) the prohibition of indemnity for a vessel against an employer under the Longshore and Harbor Workers' Compensation Act (LHWCA), at 33 U.S.C. § 905(b), did not apply because drilling mud services were not "maritime employment" for the purposes of that act. Based upon these conclusions, the trial court granted motions for summary judgment in favor of A & W Louisiana and Indemnity Insurance Company and denied those of Pennzoil and Southwestern. Pennzoil and Southwestern have appealed.

Standard of Review
Appellate courts review summary judgments de novo, applying the same criteria used by the trial courts in deciding whether summary judgment is appropriate. Schroeder v. Board of Supervisors, 591 So.2d 342 (La.1991). Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B).

Discussion

State or Federal Law?
On November 9, 1991, Pennzoil contracted for A & W Louisiana (then Chemrich) to provide services or equipment in connection with the development or production of oil, gas, or minerals "in, on or above the navigable and/or offshore waters of the United States (including exploration and production activities on or above vessel rigs, artificial islands or fixed structures)." In this contract, Pennzoil and A & W Louisiana agreed to defend and indemnify each other for all claims brought as the result of certain enumerated risks, including those caused by the liability, fault, or negligence of the indemnitee. Included within the enumerated risks are personal injury claims brought by employees of either Pennzoil or of A & W Louisiana and its contractors and subcontractors. The agreement also required A & W Louisiana to maintain insurance naming Pennzoil and its contractors, such as Southwestern, as additional insureds.
To the extent that the MSSA requires indemnification for the indemnitee's fault, it would not be enforceable under La.R.S. 9:2780, which provides in part:
A. The legislature finds that an inequity is foisted on certain contractors and their employees by the defense or indemnity provisions, either or both, contained in some agreements pertaining to wells for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, to the extent those provisions apply to death or bodily injury to persons. It is the intent of the legislature by this Section to declare null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee.
Additionally, La.R.S. 9:2780(G) provides that "waivers of subrogation, additional named insured endorsements, or any other form of insurance protection which would frustrate or circumvent the prohibitions of this Section, shall be null and void and of no force and effect."
The agreement, however, would be enforceable under maritime law, provided that "indemnification for an indemnitee's own negligence be clearly and unequivocally expressed." Theriot v. Bay Drilling Corp., 783 F.2d 527, 540 (5 Cir.1986).
*683 In Davis & Sons, Inc. v. Gulf Oil Corp., 919 F.2d 313, 316 (5 Cir.1990) (emphasis added), the United States Fifth Circuit adopted the following inquiry for determining whether a contract is maritime or not:
Determination of the nature of a contract depends in part on historical treatment in the jurisprudence and in part on a fact-specific inquiry. We consider six factors in characterizing the contract: 1) what does the specific work order in effect at the time of the injury provide? 2) what work did the crew assigned under the work order actually do? 3) was the crew assigned to work aboard a vessel in navigable waters; 4) to what extent did the work being done relate to the mission of the vessel? 5) what was the principal work of the injured worker? 6) what work was the injured worker actually doing at the time of injury?
In granting A & W Louisiana's and Indemnity Insurance Company's motions for summary judgment, the trial court relied on Thurmond v. Delta Well Surveyors, 836 F.2d 952 (5 Cir.1988), in which the United States Fifth Circuit held that a contract to perform wireline services on wellheads in state territorial waters was nonmaritime, even though the contract contemplated the use of a barge for transportation to the various work sites. The court considered the use of the vessel as only incidental to the contract's principal, nonmaritime obligation of providing wireline work, as "[s]uch services are peculiar to the oil and gas industry, not maritime commerce. Wireline services are performed on land-based wells and offshore wells, and wireline services present hazards and problems peculiar to the oil and gas industry." Id. at 955.
Although Thurmond was decided before the Davis & Sons factors were formulated, the fifth circuit later reached a similar result in Domingue v. Ocean Drilling & Exploration Co., 923 F.2d 393 (5 Cir.1991), cert. denied sub nom. Ocean Drilling & Exploration Co. v. Dimensional Oilfield Services, Inc., 502 U.S. 1033, 112 S.Ct. 874, 116 L.Ed.2d 779 (1992). Domingue also concerned a contract for wireline services, but unlike Thurmond, the work was to be performed on a drilling barge on the outer Continental Shelf. After citing Thurmond as precedent for the nonmaritime nature of such services, the court held that the contract "does not become maritime simply because the wireline services were performed aboard the drilling rig vessel." Id. at 396. Such a result, it concluded, would revive the "universally rejected contention of situs" as a controlling factor. Id. at 397.
In this appeal, Pennzoil and Southwestern argue that the trial court misapplied the Davis & Sons factors, in particular the fourth factor, which requires considering how the work contemplated by the contract relates to the mission of the vessel. They cite the line of cases based on the finding in Theriot, 783 F.2d at 539, that "[o]il and gas drilling on navigable waters aboard a vessel is recognized to be maritime commerce." The contract in Theriot, which called for the drilling and completion of a well, including the supplying of a submersible drilling barge, did not "merely touch incidentally on a vessel, but directly addressed the use and operation of the [drilling barge.]" Id.
Theriot did consider as important the contractual requirement of providing a drilling vessel, but the fifth circuit had previously held that a contract to supply casing services on a drilling barge was maritime. See Corbitt v. Diamond M. Drilling Co., 654 F.2d 329 (5 Cir.1981). The court reached the same result in Campbell v. Sonat Offshore Drilling, Inc., 979 F.2d 1115 (5 Cir.1992), after determining that all six Davis & Sons factors indicated that a contract to perform casing services on a drilling barge was maritime. Finding the special purpose of the vessel to be controlling, the court reasoned:
Campbell was a member of a casing crew which, using the OFFSHORE TAURUS's equipment-for example, the *684 vessel's derrick and draw works-to accomplish their task, was contracted to travel upon the OFFSHORE TAURUS and perform their work from the vessel, the mission of which was to drill oil and gas wells over navigable waters. In other words, the work performed by Campbell and the rest of Frank's [casing] crew was "inextricably intertwined with maritime activities since it required the use of a vessel and its crew." Davis, 919 F.2d at 317; see also McDermott Intern., Inc. v. Wilander, 498 U.S. 337, 354-357, 111 S.Ct. 807, 817-18, 112 L.Ed.2d 866 (1991) (work of a paint foreman contributes to the function of a paint boat and the accomplishment of its mission); Offshore Co. [v. Robison], 266 F.2d [769] at 779 (the work of a roustabout contributes to the mission of a submersible drilling barge).
Campbell, 979 F.2d at 1123 (emphasis added) (footnote omitted).
Although the court in Domingue expressed concern that the "situs" of the injury or work on a vessel would be the controlling factor in determining whether or not a contract was maritime, subsequent jurisprudence has revealed otherwise. In Viator v. Halliburton Co., 97-1032 (La.App. 1 Cir. 6/29/98); 713 So.2d 1281, the court had to decide whether a contract for welding services on a jackup barge was to be governed by state or maritime law. The court cited with approval Theriot's holding that drilling on navigable waters on a vessel was a maritime activity, but this premise alone did not support a finding that the contract was maritime. Instead, the court declined to characterize that contract on summary judgment because the contract did not specify why the welders were on the vessel and because other evidence suggested that their job was to repair pipes on an adjacent platform. In Brennan v. Shell Offshore, Inc., 612 So.2d 929 (La.App. 4 Cir.), writ denied, 614 So.2d 1268 (La.1993), the plaintiff was injured while welding on a jackup barge, but the contract that placed him there was held to be nonmaritime because the "jackets" that he welded were to be attached to a fixed platform. Thus, his welding did not contribute to the mission of the drilling barge. Compare with Diamond Offshore Co. v. A & B Builders, Inc., 75 F.Supp.2d 676 (S.D.Tex.1999), in which the court held that a contract assigning a welder to repair a pollution pan on a semi-submersible drilling rig was maritime. "Welding a pollution pan to the [drilling barge] was necessary to allow the vessel to accomplish its mission of exploring for oil and gas in the Gulf." Id. at 680.
In the present case, the plaintiff had been assigned to work as a drilling mud engineer aboard Southwestern's Rig # 151 for over one year. He performed his services on the vessel in its "mud room," which is where he alleges to have been injured. Although we are illequipped to analyze whether drilling mud services are more akin to wireline work or to casing services-as the parties suggest we do-we can conclude from the record that Southwestern's Rig # 151 could not perform its mission of drilling a well without the plaintiffs work. While drilling mud work may be peculiar to the oil and gas industry, when performed on a special-purpose vessel, it becomes "inextricably intertwined" with the vessel's mission. Campbell, 979 F.2d at 1123 (quoting Davis & Sons, 919 F.2d at 317).
Theriot's holding (upon which Campbell is based) has been questioned, see Lewis v. Glendel Drilling Co., 898 F.2d 1083 (5 Cir.1990), cert. denied sub nom. Avanti Services, Inc. v. Glendel Drilling Co., 502 U.S. 857, 112 S.Ct. 171, 116 L.Ed.2d 134 (1991), but state and federal courts continue to cite it with favor. See Viator, 713 So.2d 1281; Diamond Offshore Co., 75 F.Supp.2d 676. Under the "historical treatment" and "fact-specific" inquiries of Davis & Sons, we find that Campbell provides the most helpful analysis in resolving this question. Campbell is based upon truly analogous cases, whereas Thurmond (upon which Domingue, 923 F.2d 393, *685 rests) is readily distinguishable. The contract in Thurmond called for wireline work to be performed entirely on a platform; hence it did not further the mission of a vessel. Accordingly, we find that the trial court erred in classifying the instant contract as nonmaritime.

State Law as Surrogate Federal Law
A & W Louisiana and Indemnity Insurance Company also argue that the LOIA applies as surrogate federal law under the OCSLA, at 43 U.S.C. § 1333(a)(2)(A), because the accident occurred on an OCSLA "situs"-a drilling barge that is "jacked up" out of the water. In Union Texas Petroleum Corp., v. PLT Engineering, Inc., 895 F.2d 1043, 1047 (5 Cir.1990), cert. denied, 498 U.S. 848, 111 S.Ct. 136, 112 L.Ed.2d 103 (1990), the court set forth the following conditions for the application of adjacent state law under the OCSLA:
(1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto).
(2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with Federal law.
Concerning the second requirement of the above test, there is "no difference between deciding whether a contract is maritime and whether maritime law applies of its own force." Diamond Offshore Co., 75 F.Supp.2d at 681 (quoting Hodgen v. Forest Oil Corp., 87 F.3d 1512, 1524 (5 Cir.1996)). Accordingly, our conclusion that the contract is maritime forecloses application of the LOIA through the OCSLA.
Additionally, A & W Louisiana and Indemnity Insurance Company have not cited any cases holding that a jackup barge is an OCSLA situs. Brennan, 612 So.2d 929, suggested that a barge while jacked up was similar to a fixed platform, and Smith v. Penrod Drilling Corp., 960 F.2d 456 (5 Cir.1992), proposed the argument that a drilling barge would be covered by the OCSLA as an "other device[] permanently or temporarily attached to the seabed" under 43 U.S.C. § 1333(a)(1). Nonetheless, the cases finding an OCSLA situs have generally relied upon the underlying accident's physical connection to a fixed platform. For example, in Hodgen v. Forest Oil Corp., 115 F.3d 358 (5 Cir.1997), the plaintiff was injured when he attempted to swing onto a vessel from a rope attached to a fixed platform. In Dennis v. Bud's Boat Rental, Inc., 987 F.Supp. 948 (E.D.La.1997), the injury occurred on the deck of a vessel, but while the plaintiff, a platform worker, was in a personnel basket attached to a crane on a fixed platform. In Wagner v. McDermott, Inc., 899 F.Supp. 1551 (W.D.La.1994), aff'd 79 F.3d 20 (5 Cir.1996), the court suggested that the situs requirement could be met if the contract called for its substantial work to be performed on a platform, even though the "controversy" arose on a vessel. In the present case, however, there is no evidence that the plaintiff ever worked on an adjacent Pennzoil platform, and his accident undisputedly occurred in the drilling barge's mud room. Because we find the first two requirements of the Union Texas Petroleum test are not met, we need not discuss the third, whether state law is inconsistent with federal law.

Indemnity under the LHWCA
A & W Louisiana and Indemnity Insurance also argue that the LHWCA, at 33 U.S.C. § 905(b) and (c), prohibits enforcement of the indemnity provisions in the MSSA because they are not "reciprocal." The trial court found the LHWCA inapplicable because Mr. Fontenot's work was not "maritime employment." However, the trial court failed to consider the LHWCA's application through the OCSLA, at 43 U.S.C. § 1333(b), to operations for the exploration, development, removal, or transportation of natural resources on the outer Continental Shelf. In the present case, Mr. Fontenot was injured aboard a vessel in navigable waters on the outer Continental Shelf, and his injury would not have occurred had he not been working in mineral operations on the shelf. Accordingly, *686 he should have been covered by the LHWCA (through the OCSLA), and the record indicates that he has in fact been receiving benefits pursuant to the LHWCA. (Mr. Fontenot has not alleged that he was a member of the crew of Southwestern's Rig # 151, which would have precluded application of the LHWCA.)
Section 905(b) (emphasis added) of the LHWCA provides in part that:
In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person ... may bring an action against such vessel as a third party ... and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void.

Section 905(c) (emphasis added), however, creates an exception to the above rule:
Nothing contained in subsection (b) of this section shall preclude the enforcement according to its terms of any reciprocal indemnity provision whereby the employer of a person entitled to receive benefits under this chapter by virtue of section 1333 of Title 43 and the vessel agree to defend and indemnify the other for the cost defense and loss or liability for damages arising out of or resulting from death or bodily injury to their employees.
In Campbell, 979 F.2d 1115, as in the present case, an oil company had entered into separate contracts with the owner of a vessel and with the employer (a casing crew service) of an injured worker. Although the vessel and the employer had not entered into contracts with each other, they each had agreed in their respective contracts with the oil company to indemnify the oil company and its "other contractors." In finding the two contracts met the reciprocity requirement of § 905(c), the court reasoned:
The plain language of section 905(c) requires reciprocity between vessels and employers wishing to enter agreements to indemnify, not privity. Although Sonat [the vessel] may not have agreed to directly indemnify Frank's [the employer] pursuant to the UTP-Frank's agreement, it did agree to do so pursuant to the drilling contract entered into by Sonat and UTP [the oil company]....
In sum, Sonat and Frank's were brought together by UTP solely for the purpose of carrying out UTP's oil-drilling operation. In contracting with UTP, Frank's and Sonat explicitly agreed to indemnify each other, and these agreements are unambiguous and completely reciprocal.
Id. at 1125 (footnote omitted).
In the MSSA with Pennzoil, A & W Louisiana (then Chemrich) agreed to indemnify the "COMPANY GROUP," which was defined to include Pennzoil's contractors and subcontractors. Thus, A & W Louisiana agreed to indemnify Southwestern as a contractor of Pennzoil. In its drilling contract with Pennzoil, however, Southwestern agreed to indemnify the "COMPANY," which was defined for indemnity purposes as:
Pennzoil Exploration and Production Company, its parent, and any subsidiaries and affiliated companies, non-operating interest owners associated therewith, non-operating co-owners of leases and mineral interests and non-operating participants with any of such companies in joint operating agreements. "COMPANY" shall not mean contractors of COMPANY (other than CONTRACTOR) supplying goods and services in connection with COMPANY's operations.

(Emphasis added.) As Southwestern did not agree to indemnify Pennzoil's contractors in its drilling contract and Southwestern was not a party to the MSSA with Pennzoil, we cannot conclude that the employer, A & W Louisiana, and the vessel, Southwestern, agreed to "defend and indemnify the other" as required by § 905(c). Although an indemnity obligation *687 flows from A & W Louisiana to Southwestern in the MSSA, a reciprocal obligation does not flow from Southwestern to A & W Louisiana under the drilling contract. The absence of this reciprocity precludes application of § 905(c); therefore, the indemnity provision in the MSSA, as between Southwestern and A & W Louisiana, is void under § 905(b).
Unlike the LOIA, however, the LHWCA does not invalidate an additional insured clause as "a proscribed form of indirect liability." LeBlanc v. Global Marine Drilling Co., 193 F.3d 873, 875 (5 Cir.1999), cert. denied sub nom. Frank's Casing Crew & Rental Tools, Inc. v. Marine Drilling Management Co., ___ U.S. ___, 120 S.Ct. 1831, 146 L.Ed.2d 775 (2000) (quoting Voisin v. ODECO Drilling Co., 744 F.2d 1174, 1177 (5 Cir.1984), cert. denied sub nom. Rig Hammers, Inc. v. Odeco Drilling, Inc., 470 U.S. 1053, 105 S.Ct. 1757, 84 L.Ed.2d 820 (1985)). As explained in LeBlanc, the invalidation of an indemnity clause under § 905(b) does not mean that an additional insured clause is similarly void. We, therefore, find that Southwestern may proceed (1) against Indemnity Insurance Company as an additional insured under A & W Louisiana's policy and (2) against A & W Louisiana directly, if it can be shown that A & W Louisiana did not comply with the insurance requirements in the MSSA. See Voisin, 744 F.2d 1174.
If Pennzoil can be considered a "vessel" as the "charterer" of Rig # 151, see Lewis v. Keyes 303, Inc., 834 F.Supp. 191 (S.D.Tex.1993), then the indemnity provisions in the MSSA are subject to § 905(b) and (c). If Pennzoil is not a "vessel," then the MSSA is governed by general maritime law. Under either scenario, we find that the indemnity provisions are enforceable.
A & W Louisiana contends that the indemnity obligations that it and Pennzoil assumed in the MSSA are not "reciprocal" because they differ concerning property damage, liens, and wreckage, etc. However, under the personal injury clause in the MSSA, A & W Louisiana and Pennzoil clearly agreed to indemnify each other. Although A & W Louisiana's obligation extends to suits by its contractors and subcontractors whereas Pennzoil's only covers its employees, we do not find this distinction material, as the indemnity flows in both directions. Even if the indemnity provisions were invalid under § 905(b), for the reasons discussed above, the additional insured provision would survive. Additionally, because the language of the indemnity agreement unequivocally contemplates indemnification for the indemnitee's own negligence, we find that it would be enforceable under maritime law. See Theriot, 783 F.2d 527. Accordingly, we find that Pennzoil may proceed (1) against A & W Louisiana to enforce the indemnity provisions of the MSSA and (2) against Indemnity Insurance Company as an additional insured under the A & W Louisiana policy.

Decree
For the above reasons, the summary judgments rendered in favor of Indemnity Insurance Company and A & W Louisiana are reversed. Judgment is hereby rendered granting Pennzoil's motion for summary judgment in its entirety and granting Southwestern's motion for summary judgment as explained above. The case is remanded for further proceedings consistent with this opinion, and costs of this appeal are assessed to A & W Louisiana and Indemnity Insurance Company.
REVERSED AND REMANDED.